Linda HUTCHINSON, on behalf of Andrew Michael BAKER and in her own right, Twyla Jane Baker, a minor, Amy Lynn Baker, a minor, Robert Raymond Hutchinson, a minor, and Katie Ann Hutchinson, a minor, Plaintiffs–Appellants,

v.

David SPINK, Karen Spink, Grinnell Mutual Reinsurance Company, Debbie Donald, Steven Obershaw, Jon Angeli, and Kill Brothers Company, Defendants–Appellees.

No. 96–1842.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1997.

Decided Sept. 23, 1997.

Adrienne R. Borisy (argued), Borisy & Gross, Platteville, WI, for Plaintiffs–Appellants.

Todd L. Stevenson, Stephen C. Krumpe, O'Connor & Thomas, Dubuque, IA, for Defendants–Appellees David and Karen Spink.

Todd L. Stevenson (argued), Stephen C. Krumpe, O'Connor & Thomas, Dubuque, IA, for Defendant–Appellee Grinnell Mut. Reinsurance Co.

Edward M. Kay, James T. Ferrini, Susan Condon (argued), Clausen Miller P.C., Chicago, IL, Thomas R. Challos, Jr., Charles Stone, Cohen, Weisenburger & Challos, Chicago, IL, for Defendants–Appellees Debbie Donald, Steven Overshaw and Jon Angeli.

Bruce A. Schultz, Kirtt Godager (argued), Coyne, Niess, Schultz, Becker & Bauer, Madison, WI, for Defendant–Appellee Kill Brothers Co.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Andrew Michael Baker was a disabled child who was killed in a horrifying way while he was under the care of the foster parents to whom he was entrusted by representatives of Wisconsin's Grant County Department of Social Services. His mother, Linda Hutchinson, along with her co-plaintiffs, tried to

bring this action in federal court as indigents, under 28 U.S.C. § 1915. The district court rejected her motion for leave to proceed *in forma pauperis* (IFP), not because it found fault with her allegations of indigence (which it accepted), but because it found that her complaint failed to state any legally cognizable federal claim. It dismissed the proposed state law claims without prejudice, because complete diversity was lacking and the case was not an appropriate candidate for supplemental jurisdiction.

Although we agree that many of the counts in Hutchinson's complaint would probably fall under Rule 12(b)(6), at least one probably survives. Furthermore, because Hutchinson's complaint was filed before the effective date of the amendments to § 1915 contained in the Prison Litigation Reform Act (PLRA), some of which apply to nonprisoner litigation like this, the legal standard by which the complaint should have been tested is the one found in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), and *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). We therefore reverse and remand for further proceedings.

I

From the proposed complaint, one learns that the unhappy events underlying this suit centered around the care and placement of Hutchinson's son Andrew. As of early January 1993, Andrew (then twelve) was living with his mother. He suffered from hyperactivity and attention deficit disorder, for which he received daily doses of Ritalin and Imipramine. One night, Andrew became uncontrollable and a neighbor called the police. The responding police officer in turn contacted Debbie Donald, the Grant County social worker on call that night, who instructed him to remove Andrew from the home. Hutchinson acquiesced, but she asked that Andrew be taken to Parkway Hospital, in Madison, Wisconsin, because of his disabilities. At the time Andrew left, she understood that this was where he was going.

In fact, Donald and her direct supervisor, Steven Obershaw, decided that Andrew was not eligible for hospitalization and would not be until he displayed uncontrollable or dangerous behavior while in foster care. Instead, on January 5, 1993, they placed him in the foster home operated by David and Karen Spink. As soon as Hutchinson learned of this, she asked the Grant County authorities to change his placement, because the Spinks used foster boys for farm work, and she believed it would be dangerous for Andrew to be working either near farm equipment or on a farm, in light of his disabilities. Hutchinson specifically requested that Andrew be placed with Clyde Halverson, who was his Boy Scout leader and who was interested in serving as a foster parent. The Grant County authorities rejected her suggestion on the astonishing ground that the Halversons are Mormon.

Andrew, meanwhile, was still at the Spinks' farm, and was (as his mother had feared) engaged in farm work. On February 2, 1993, he and another boy were working with an operating Killsbro Gravity Box, manufactured by appellee Kill Brothers, unloading shelled corn. David Spink instructed Andrew to stand inside the Gravity Box and to push the corn down, so that it would move into an auger and blower, and then into a grain bin. While inside the machine, Andrew fell into the corn. The other boy shouted at Spink to stop the tractor, but nothing happened until it was too late. Inhaling some 20 pounds of corn into his lungs and body, Andrew died by suffocation. Spink allowed him to flow through the chute so that he could remove him from the corn. Spink did not apply proper emergency methods once he had retrieved Andrew, nor did he seek emergency medical help in time to save Andrew's life.

II

Hutchinson filed her proposed complaint with the district court on February 1, 1996, seeking IFP status under 28 U.S.C. § 1915. She sued both on behalf of Andrew and in her own right, and she included Andrew's half-siblings Twyla Jane Baker, Amy Lynn Baker, Katie Ann Hutchinson, and Robert Raymond Hutchinson as co-petitioners. At that time, as we explain in greater detail below, no estate had been opened under Wisconsin law on Andrew's behalf. The pro-

posed defendants were David and Karen Spink, Grinnell Mutual Reinsurance Company (the Spinks' insurer), Debbie Donald, Steven Obershaw, and Jon Angeli (all of Grant County), and Kill Brothers. Count I of the complaint alleged a right to relief under 42 U.S.C. § 1983 against the County defendants and the Spinks, with specific allegations charging violations of Andrew's rights under the Eighth Amendment, the substantive due process component of the Fourteenth Amendment, the Equal Protection clause of the Fourteenth Amendment, and the Thirteenth Amendment. Count II claimed that the County defendants had violated Andrew's rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5106(a)–(c), and the rights of both Andrew and his mother under numerous amendments to the U.S. Constitution. Count III raised state tort claims against Kill Brothers.

The district court, as noted above, concluded from the affidavit of indigence that the petitioners were unable to prepay the fees and costs of instituting their lawsuit. With respect to Counts I and II, the court then denied leave to proceed IFP for everyone except Linda Hutchinson, proceeding on behalf of Andrew's estate. Evaluating the claims under Counts I and II as one would approach a motion under Rule 12(b)(6), the court concluded that none had merit. For Count III, it dismissed because (1) citizens of Wisconsin appeared both as plaintiffs and defendants, which defeats jurisdiction under 28 U.S.C. § 1332, and (2) the tort claims against Kill Brothers did not arise from the same operative facts as the remainder of the complaint, which makes supplemental jurisdiction under 28 U.S.C. § 1367 unavailable.

## III

█ The first issue we consider is whether we actually have a proper plaintiff before us. As the district court correctly recognized, the only possible party entitled to raise the claims in the proposed complaint would be Andrew's estate, through a proper representative. Wisconsin law governs not only Count III for this purpose but also Counts I

and II. The question whether a § 1983 claim survives the tort victim's death (like many background questions in federal statutes) follows state law. *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir.1974) ("In a federal civil rights action where the person who has been deprived of his rights has died, the action survives for the benefit of the estate if the applicable state law creates such a survival action."). Similarly, whether by incorporation through federal common law or more directly (a question we need not resolve here), state law governs the survival of statutory civil rights actions like the ADA claim asserted in Count II of the complaint. See *Slade v. U.S. Postal Serv.,* 952 F.2d 357, 360 (10th Cir.1991) (for Title VII purposes, federal common law incorporates state statute for survival of personal injury actions); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 875–76 (11th Cir.1986) (declining to decide whether state law or federal common law applies to survival of Title VII action, because result was the same); see also *U.S. E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276 (7th Cir.1995) (damages under ADA upheld, where employee died while suit was pending). In Wisconsin, a tort action for "injuries to the person" survives the victim's death, see Wis. Stat. Ann. § 895.01(1), and thus the § 1983 and ADA claims would (if otherwise sustainable) survive. But only the decedent's estate is entitled to sue on such a claim in Wisconsin. Wis. Stat. Ann. § 777.01. The problem here was that, as of the time of oral argument, no estate had been opened on Andrew's behalf in a Wisconsin court.

Four days after oral argument, on February 14, 1997, Hutchinson obtained an order from the Grant County Circuit Court appointing her as the special administrator of the Estate of Andrew Michael Baker. Addendum to Supplemental Brief of Appellants at 1. That order specifically grants Hutchinson the same powers that a personal representative would have, including the power to bring lawsuits on behalf of the estate and the power to be appointed personal representative, if appropriate. Wisconsin has an "informal administration" procedure for the

probate of estates when the decedent dies intestate and certain other requirements (consent of interested parties, bonding) are met. Wis. Stat. Ann. § 865.02(1)(b). Of particular importance to our case is § 865.09, which deals with the time at which the appointed representative's powers accrue:

> (2) The duties and powers of a personal representative appointed under this chapter commence upon the personal representative's appointment. The personal representative's powers relate back in time to acts by the personal representative prior to appointment which are beneficial to the estate.

Taking into account the language of the order of the Grant County Circuit Court, it appears that Hutchinson's powers as special administrator are as broad as those of a personal representative under § 865.02. This suggests in turn that her actions as special administrator will relate back in the same way as those of a personal representative would under § 865.09(2). At the very least, this is enough to allow the case to go forward at this stage, where we have under review only the district court's order denying IFP status.

■ Before Congress passed the PLRA, which took effect on April 26, 1996, 28 U.S.C. § 1915(d) allowed district courts to "dismiss [an IFP] case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." The Supreme Court addressed the scope of that power in two cases: the first, *Neitzke v. Williams*, held that an IFP complaint that fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous within the meaning of § 1915(d), see 490 U.S. at 320, 109 S.Ct. at 1828; and the second, *Denton v. Hernandez*, held that a court may dismiss an IFP complaint as factually frivolous only if the facts alleged are "clearly baseless," meaning fanciful, fantastic, delusional, irrational, or wholly incredible, see 504 U.S. at 32–33, 112 S.Ct. at 1733–34. Now it is true that the PLRA substantially changed § 1915, not only for cases brought by prisoners, but in some respects for all indigent litigants. Under the amended version of the statute, § 1915(e)(2) requires the court to dismiss if it determines

(1) that the allegation of poverty is untrue, (2) that the action or appeal is frivolous or malicious, (3) that the action fails to state a claim upon which relief may be granted, or (4) that the action seeks monetary relief against a defendant who is immune from such relief. We have held, however, that the applicability of the amended version of the PLRA depends on the date when the case was filed. See *Robbins v. Switzer*, 104 F.3d 895, 897 (7th Cir.1997); *Thurman v. Gramley*, 97 F.3d 185, 188–89 (7th Cir.1996). We therefore must assess Hutchinson's complaint under the former § 1915(d), not the amended § 1915(e)(2).

As an aside, we note that this happenstance of filing date means that a sticky issue that we explored at oral argument is not before us today. There will be times when a district court, obeying the apparent command of amended § 1915(e)(2), will dismiss a case for failure to state a claim before any of the defendants have been served with process. The disappointed plaintiff, once the dismissal is formalized in a final judgment, will naturally have an opportunity to take an appeal. But how will the defendants know that the legal sufficiency of a complaint filed against them is before the court of appeals? If the court of appeals, reviewing the matter *de novo*, agrees with the district court, then the defendants may be content to remain ignorant. If the court of appeals finds merit in the complaint, however, the defendants could find themselves on remand unable (at least as a practical matter) to attack the legal sufficiency of the complaint. The incidence of this problem may well hinge on another sort of filing date happenstance. Once a complaint has been filed, a court may not dismiss on its own motion until it has permitted service of process pursuant to Fed. R.Civ.P. 4. *Bryan v. Johnson*, 821 F.2d 455, 457 (7th Cir.1987). A complaint is not deemed to be "filed," however, until the requisite fees have been paid or the complainant has been granted leave to proceed *IFP*. *Williams–Guice v. Board of Educ.*, 45 F.3d 161, 162 (7th Cir.1995). So, if a court authorizes a complainant to proceed IFP, or the complainant timely pays the requisite fees after denial of an IFP motion, the defendant will surely have notice because the court will

be precluded from dismissing the complaint for failure to state a claim until after service of process. But if a court dismisses under amended § 1915(e)(2) before a complaint has been filed, then the defendant may be without notice of the decision in its favor and the prospect of an appeal. It may be necessary, when the issue is squarely presented, to consider how the defendants' rights will be protected in such a situation. Here, all of the defendants have fully briefed the issues before this court, and the question itself is the narrower one presented by former § 1915(d), to which we now turn.

In *Neitzke*, the Supreme Court described a complaint as frivolous "where it lacks an arguable basis either in law or in fact." 490 U.S. at 325, 109 S.Ct. at 1831. The power the district judges enjoyed under § 1915(d) was designed principally to replicate the financial incentives paying litigants have to refrain from filing pointless cases. Id. at 328, 109 S.Ct. at 1833. The Court noted that a Rule 12(b)(6) dismissal, testing as it does the legal sufficiency of a complaint, by no means implies that the claim was a frivolous one. To the contrary, a significant number of 12(b)(6) dismissals reach the Supreme Court itself, as litigants and lower courts alike test the limits of various legal theories. We must therefore decide whether any of Hutchinson's claims on behalf of Andrew's estate are arguable, not whether we would ultimately grant a motion filed by the defendants under Rule 12(b)(6).

■ We see at least one claim in Hutchinson's complaint that passes this test: her allegation that Andrew suffered a deprivation of substantive due process, in violation of 42 U.S.C. § 1983, when the County officials placed him in the Spinks' foster home and negligently supervised that home. As the district court acknowledged, the State has a "special relationship" with those it has taken into custody. Compare *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 201, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989). In *K.H. v. Morgan*, 914 F.2d 846 (7th Cir.1990), this court held that once the State removes a child from her natural parents, it assumes at least a rudimentary duty of safekeeping. *Id.* at 852. It cannot place a

child in custody with foster parents it knows are incompetent or dangerous. *Id.*; see also *Norfleet v. Arkansas Dep't of Human Servs.*, 989 F.2d 289, 293 (8th Cir.1993); *Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 892–93 (10th Cir.1992); *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir.1990); *Taylor v. Ledbetter*, 818 F.2d 791, 795 (11th Cir.1987) (*en banc*); *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134, 141–45 (2d Cir.1981); *Wendy H. v. City of Philadelphia*, 849 F.Supp. 367, 37172, 376 (E.D.Pa.1994). Even if the State thought that the Spink household posed fewer dangers to Andrew than his home, Hutchinson has also alleged that the State knowingly passed up the chance to place Andrew in a household with risks far lower than those posed by the Spinks: that of Mormon Boy Scout Leader Clyde Halverson. It was the State's affirmative act that placed Andrew with the Spinks instead of the Halversons, not any omission that would lie beyond the reach of § 1983 under *DeShaney*.

■ The district court refused to allow Hutchinson to proceed on this claim because it thought the complaint failed to allege any facts supporting an inference that the state officials acted deliberately in placing Andrew in an unsafe environment. Complaints need not plead facts, however, as we have frequently noted. *Palmer v. Board of Educ.*, 46 F.3d 682, 688 (7th Cir.1995) (citing *Leatherman v. Tarrant County*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993)); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). It is enough if the complaint puts the defendants on notice of the claim and that some set of facts could be presented that would give rise to a right to relief. *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir.1997); *Venture Associates Corp. v. Zenith Data Sys.*, 987 F.2d 429, 432 (7th Cir.1993); see also Wright & Miller, Federal Practice and Procedure: Civil 2d §§ 1215, 1216 (1990). This complaint meets that standard; it is clearly

not frivolous or malicious. Furthermore, the district court's criticism of the complaint for failing to allege the officials' state of mind did not take into account the explicit instruction in Fed.R.Civ.P. 9(b) permitting "malice, intent, knowledge, and other condition of mind" to be "averred generally." At the very least, for purposes of § 1915(d) it presents an arguable case for relief, and the facts that are alleged are not the kind of irrational or delusional musings to which the Supreme Court referred in *Denton*. Hutchinson, on behalf of the estate, must be allowed to go forward on this claim.

██ Our review of the remainder of the legal theories alleged leaves us in agreement with the district court's assessments. Although it asserts an equal protection claim, there is no information about how Andrew was treated differently from similarly situated children or to what definable class he belonged. The claims purportedly brought under the Eighth Amendment are similarly frivolous. The complaint asserts that the Spinks, acting under color of state law, violated the cruel and unusual punishment clause of the Eighth Amendment by forcing Andrew to perform farm work. It does not allege, however, that this was "punishment" for any crimes Andrew may have committed, and thus fails utterly to come within the scope of the Eighth Amendment's protections. See *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). The claim under the Thirteenth Amendment fails because there is no allegation that Andrew was coerced into performing labor through the threat of physical or legal sanctions, as required by *United States v. Kozminski*, 487 U.S. 931, 944, 108 S.Ct. 2751, 2760, 101 L.Ed.2d 788 (1988) (construing 18 U.S.C. § 241, a criminal counterpart to § 1983); see also *Herndon v. Chapel Hill–Carrboro City Bd. of Educ.*, 89 F.3d 174, 180–81 (4th Cir.1996), *cert. denied sub nom. Reinhard v. Chapel Hill–Carrboro City Bd. of Educ.*, —— U.S. ——, 117 S.Ct. 949, 136 L.Ed.2d 837 (1997); *United States v. Alzanki*, 54 F.3d 994, 1000–02 (1st Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996). Last, no matter what

other religion-based claims might be imagined with respect to the allegation that the county officials refused to place Andrew in a Mormon household, we see no way that this decision violated his free exercise rights under the First Amendment, given the fact that Hutchinson does not allege that he was a Mormon. *Wilder v. Bernstein*, 848 F.2d 1338, 1342, 1346–47 (2d Cir.1988) (citing *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and *Board of Educ. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943)); *cf. Prince v. Massachusetts*, 321 U.S. 158, 164, 64 S.Ct. 438, 441, 88 L.Ed. 645 (1944).

██ The claims under Count II fare no better than those we have just discussed. Even if Andrew was disabled within the meaning of the ADA, the complaint does not allege that he was excluded from some program, activity, or benefit because of his disability. Rather, it is that the State failed to make a special accommodation for his disability by refraining from placing him in the Spinks' home. Without a claim of exclusion or discrimination on the basis of disability, neither the ADA nor the Rehabilitation Act of 1973, 29 U.S.C. § 794 (on which Hutchinson also relies), affords a right to relief. See *Rothman v. Emory Univ.*, 123 F.3d 446, 451–52 (7th Cir.1997). The ADA does not create a special obligation on the part of Grant County to provide Andrew with a hospital placement and to accommodate special requests for his treatment.

██ The allegations under CAPTA—a statute that conditions state grants for child abuse and neglect prevention and treatment programs on the requirement that states investigate abuse and neglect reports promptly and take action to protect the child upon a finding of abuse or neglect-suffer from one fatal flaw: nowhere does Hutchinson attempt to identify with particularity what specific right under CAPTA the state defendants violated, nor does she tell us what provisions of CAPTA should lead us to conclude that Congress intended to create a private right of action under the statute. Some of our sister circuits have already held that child beneficiaries of CAPTA do not have a private right

to enforce it. See *Doe v. District of Columbia*, 93 F.3d 861, 865 (D.C.Cir.1996); *Tony L. By and Through Simpson v. Childers*, 71 F.3d 1182 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1834, 134 L.Ed.2d 938 (1996). We have no need to reach that question (which would certainly in other circumstances be the kind of arguable legal point that would justify IFP status), because the complaint lacks even the basics that would support such a claim.

 Last, we agree entirely with the district court that the claims against the unfortunately named Kill Brothers Company were correctly dismissed on jurisdictional grounds. Even with the remand for further proceedings on the substantive due process claims, the link between these claims and the constitutional claims is too weak to support supplemental jurisdiction. Hutchinson argues that Kill Brothers was negligent in manufacturing the Killsbro Gravity Box and in failing to warn users of its dangers. These allegations are not "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," as the supplemental jurisdiction statute requires. 28 U.S.C. § 1367. Nor is there complete diversity, as the district court explained in its opinion. We agree that the proper disposition of this part of the case was a dismissal without prejudice, so that Hutchinson could pursue any claims she might have on Andrew's behalf in the state courts.

We therefore REVERSE and REMAND the district court's denial of leave to proceed *in forma pauperis* on Hutchinson's claim on behalf of the Estate of Andrew Michael Baker, insofar as the complaint alleged a right to recover under 42 U.S.C. § 1983 for a violation of Andrew's substantive due process rights. Now that the estate is formally before the court, however, the district court is free to reconsider its initial finding of indigency. We AFFIRM all other aspects of the district court's judgment. We also grant the motions filed by the defendants to strike the portion of the Plaintiffs' Supplemental Brief that addressed matters going beyond the estate issue encompassed in the court's order from the bench. This court is not the place where additional factual materials can be added to the record, and plaintiffs should have confined themselves to the issue specified in the court's order. Allocation of the costs of the litigation, including this appeal, shall await the outcome on the merits. come on the merits.