**HARLEY–DAVIDSON,
INCORPORATED,
Plaintiff–Appellee,**

v.

**MINSTAR, INCORPORATED, and AMF
Incorporated, Defendants–
Appellants.**

No. 94–2171.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1994.

Decided Nov. 30, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 28, 1994.*

* Hon. Walter J. Cummings did not participate in the consideration of the petition for rehearing en banc.

342

Scott W. Hansen, Anne Morgan Hlavacka, Jeffrey P. Clark (argued), Reinhart, Boerner, Vandeuren, Norris & Rieselbach, Milwaukee, WI, for plaintiff-appellee.

Gerard D. Kelly, J. Andrew Schlickman (argued), Sidley & Austin, Chicago, IL, John W. Hein, David J. Edquist, Gibbs, Roper, Loots & Williams, Milwaukee, WI, for defendants-appellants.

Before POSNER, Chief Judge, BAUER, Circuit Judge, and WILL, District Judge.**

POSNER, Chief Judge.

Harley–Davidson, the plaintiff in this CERCLA suit (the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, commonly known as the Superfund statute), owns a manufacturing plant in York, Pennsylvania. Its predecessor had bought the plant from a predecessor of Minstar, Inc. and AMF Inc., related corporations that are the defendants-appellants. The buyer had agreed to indemnify the seller against all liabilities relating to the division of the seller (called the AMF York Division) that owned the plant. Later the land on which the plant was located was found to be contaminated and Harley–Davidson was forced to incur clean-up costs. CERCLA entitles the owner of contaminated land to seek contribution from other persons who are responsible in whole or part for the contamination, so Harley–Davidson brought this suit against Minstar, AMF, and others. Minstar and AMF set up the indemnity agreement in defense, but the district judge ruled that the agreement was invalid under CERCLA and therefore was not a defense to Harley–Davidson's claim for contribution. 837 F.Supp. 978 (E.D.Wis.1993). Although this was an interlocutory ruling, the district judge certified it for an immediate appeal under 28 U.S.C. § 1292(b), and we accepted the certification.

Section 107(e) of CERCLA states, in subsection (1): "No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from ... any person who may be liable ... under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section." 42 U.S.C. § 9607(e). Harley–Davidson directs our attention to the first sentence, which appears to invalidate indemnification agreements made by "responsible parties" (in the lingo of CERCLA), such as Minstar and AMF, while Minstar and AMF direct us to the second sentence, which appears to authorize precisely such agreements. The subsection taken as a whole is notably obscure, but we agree with every other appellate court that has been called on to interpret it that it does not outlaw indemnification agreements, but merely precludes efforts to divest a responsible party of his liability. E.g., *John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 405 (1st Cir.1993);

** Hon. Hubert L. Will of the Northern District of Illinois.

*United States v. Hardage*, 985 F.2d 1427, 1433 (10th Cir.1993). The first sentence speaks of "transfer[ring] ... liability," that is, of shifting liability from one person to another. Indemnification does not do that. The indemnified party remains fully liable to whomever he has wronged; he just has someone to share the expense with. The second sentence clearly permits sharing, just as the first forbids shifting.

■ It would be extraordinary if the draftsmen had wanted to bar insurance against CERCLA liability (insurance is just a form of indemnification). Public policy does on occasion demand that a wrongdoer be forbidden to shift the cost of liability to another through insurance or some other form of indemnification, but that is in cases of deliberate wrongdoing. *Truck Ins. Exchange v. Ashland Oil, Inc.*, 951 F.2d 787, 790 (7th Cir.1992); *Western Casualty & Surety Co. v. Western World Ins. Co.*, 769 F.2d 381, 385 (7th Cir.1985). Individuals and firms are normally allowed to insure against the consequences of their negligence; what else is automobile liability insurance? Proof of CERCLA liability does not require proof even of negligence, let alone of deliberate wrongdoing; CERCLA liability is strict. *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 974 F.2d 775, 779 (7th Cir.1992); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir.1985); see *Kerr–McGee Chemical Corp. v. Lefton Iron & Metal Co.*, 14 F.3d 321, 325–26 (7th Cir.1994). Harley–Davidson flinches from the implications of its position, and, fastening on the word "insure" in the subsection's second sentence (it does not appear in the first sentence), argues that contracts of insurance are the one and only form of indemnification that the statute allows. But what sense would that make? Why would rational draftsmen allow a polluter to shift the cost of his liability to an insurance company but not to another polluter? Even the semantic argument is weak, since "insure" does not stand alone; the words are "to insure, hold harmless, *or indemnify.*" Harley–Davidson wants us to strike words from the statute, and it had better have compelling reasons for such disfiguring surgery.

It points out that if indemnification (we would add, in the form of insurance as otherwise) is allowed, potential polluters will have less incentive to take steps to avoid CERCLA liability, since they will be able to hand off all or part of the cost to the indemnitor. That of course is a problem with any form of insurance or indemnification. It is what is called moral hazard. When the problem is especially acute, insurance companies will not write insurance. *Western Casualty & Surety Co. v. Western World Ins. Co., supra,* 769 F.2d at 385. The law may even, as we noted, bar indemnification, as in cases of deliberate wrongdoing. The venerable requirement that an insured have an "insurable interest," the requirement that for example prevents a person from buying life insurance on the life of a stranger, *Connecticut Mutual Life Ins. Co. v. Schaefer,* 94 U.S. 457, 460, 24 L.Ed. 251 (1877), illustrates the concern with moral hazard. One can imagine, if barely, a decision by Congress that pollution is such an awful menace to society that polluters—even involuntary polluters—should be forbidden to insure. But there is no evidence of such a decision and it would be inconsistent with the second sentence, as well as with Harley–Davidson's concession that Minstar and AMF could have protected themselves with an insurance contract.

That leaves the first sentence unexplained. And it is mysterious. Indemnification does not, as we have already explained, "transfer" liability from the person indemnified. The latter remains fully liable to the victims of his wrongdoing. If a person buys automobile liability insurance and later is sued for damages arising out of an automobile accident, he cannot defend by saying, "I have insurance, so am not liable to you; go sue the insurance company." In most states the victim could not sue the insurance company if he wanted to. *National Union Fire Ins. Co. v. Baker & McKenzie,* 997 F.2d 305, 308 (7th Cir.1993); *Truck Ins. Exchange v. Ashland Oil, Inc., supra,* 951 F.2d at 789. But in the legislative process leading up to the enactment of CERCLA, Congress considered allowing defendants in some cases to transfer liability to other responsible parties. S.Rep. No. 848, 96th Cong., 2d Sess. 44 (1980); Thaddeus Bereday, Note, "Contractual Transfers of Li-

ability under CERCLA Section 107(e)(1): For Enforcement of Private Risk Allocations in Real Property Transactions," 43 *Case W. Reserve L.Rev.* 161, 178–79, 204–07 (1992). The idea was dropped, and the first sentence of section 107(e)(1) may have been intended to make clear beyond any possibility of doubt that it was indeed dropped, that there is no transferring CERCLA liability. This is conjecture, but it is more plausible conjecture than anything that Harley–Davidson has offered us.

■ It has urged on us, however, an alternative ground for upholding the district judge's ruling barring Minstar and AMF from enforcing the indemnification agreement: that despite the breadth of the agreement, it is not in fact applicable to the cleanup costs that Harley–Davidson incurred at the York, Pennsylvania site. This ground was not considered by the district court, but that is no bar to our considering it. Any nonwaived ground may be urged on appeal in defense of a judgment. *Massachusetts Mutual Life Ins. Co. v. Ludwig,* 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976) (per curiam). This precept is as applicable to orders of which we have jurisdiction by virtue of 28 U.S.C. § 1292(b) as it is to any other orders. *Edwardsville National Bank v. Marion Laboratories, Inc.,* 808 F.2d 648, 651 (7th Cir.1987); cf. *Miller v. Bolger,* 802 F.2d 660, 666–67 (3d Cir.1986). Normally, it is true, we review only final judgments (final "decisions" in the language of 28 U.S.C. § 1291). But if an interlocutory order is properly before us, the reason for considering alternative grounds for affirmance of a final judgment is equally present. It is pointless to reverse the district court if it is apparent that when the case is remanded, that court will have to reinstate its order because the party that obtained it in the first round is indeed entitled to it, albeit on a different ground from the one initially adopted by that court.

■ The question that Harley–Davidson asks us to answer regarding the scope of the indemnification agreement depends simply on the wording of the agreement interpreted in light of applicable state law governing indemnification agreements; there is no question of federal law. E.g., *Beazer East, Inc. v. Mead Corp.,* 34 F.3d 206, 212–15 (3d Cir.1994); *Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 14–15 (2d Cir.1993); *American Policyholders Ins. Co. v. Nyacol Products, Inc.,* 989 F.2d 1256, 1263–64 (1st Cir.1993). Harley–Davidson argues that the agreement is not broad enough to cover the contamination of the York site. But it could not be more broadly worded. It says that "[Harley–Davidson] shall ... indemnify AMF INCORPORATED against all debts, liabilities, and obligations, without any limitation, relating to AMF INCORPORATED's AMF York Division, its operations and products, whether known or unknown, ... and whether existing on the date of this agreement or coming into existence hereafter." The arguments that Harley–Davidson makes against taking the words in their natural meaning are makeweights, illustrated by its argument that other divisions of the defendants' predecessor may have been responsible for the contamination—the York Division merely owned the site, and the agreement refers to York's "operations and products." Yes, but the operative wording is "relating to ... [the] York Division, its operations and products," and liability arising from the contamination of land owned by the York Division "relat[es]" to the York Division. The applicability of the agreement is supported by decisions construing similar agreements in other CERCLA cases. *Olin Corp. v. Consolidated Aluminum Corp., supra,* 5 F.3d at 15–16; *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1461–63 (9th Cir.1986).

The indemnification agreement is enforceable and applicable, and bars Harley–Davidson's claim against these defendants.

REVERSED.