[No. B137139. Second Dist., Div. Three. Feb. 14, 2001.]

LEE NEWMAN, M.D., INC., et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK, N.A., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4 of the Discussion.

■■■■■■■■■■■■■■■■

COUNSEL

Mark P. Geffon; Zelner & Karpel and Donald E. Karpel for Plaintiffs and Appellants.

Barton, Klugman & Oetting and Robert Louis Fisher for Defendant and Respondent.

OPINION

**PERLUSS, J.**\*—Plaintiffs and appellants Lee Newman, M.D., Inc., a Medical Corporation and Lee Newman, M.D., Inc., a Medical Corporation doing business as Beverly Hills Medical Clinic (Newman) appeal from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer of defendant and respondent Wells Fargo Bank, N.A. (Wells Fargo) to the two causes of action pleaded against Wells Fargo in Newman's first amended complaint.

The essential question presented is whether a negligence claim may be asserted against a depositary or collecting bank by an employer that has been victimized by dishonest employees who misappropriate and deposit checks through the use of fraudulent indorsements.

Although the trial court properly ruled that the California Uniform Commercial Code precludes a common law negligence claim against Wells Fargo, we reverse the judgment of dismissal because the factual allegations of the first amended complaint are adequate to state a cause of action against Wells Fargo under California Uniform Commercial Code section 3405, subdivision (b).[1]

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

In February 1996 Newman hired Naomi Zamano as bookkeeper and office manager for Newman's medical practice. In that position, Zamano had

---

\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further references to the Commercial Code are to the California Uniform Commercial Code. Unless otherwise indicated, section references will also refer to the California Uniform Commercial Code.

[2] The facts we recite are taken from the first amended complaint, which is the operative pleading before us. As we are required to do, we assume the truth of these allegations.

responsibility for accounts receivable, accounts payable, issuance of checks, bank deposits and related financial matters. In March 1996 Newman employed Jacqueline Solis as assistant office manager. Solis was responsible for patient management and related financial matters.

During the period of their employment by Newman, Zamano and Solis, acting in concert with a confederate Angelica Arreola, misappropriated 27 checks and insurance company drafts, totaling more than $40,000. Zamano and Solis used two different methods to misappropriate funds: (a) Fifteen checks and drafts made payable to Newman and received at Newman's office were fraudulently indorsed by Zamano or Solis and thereafter cashed or deposited into their personal bank accounts. (b) Twelve checks and drafts drawn by Newman and made payable to Newman's patients were obtained by Zamano and Solis, fraudulently indorsed with the name of the payee and thereafter cashed or deposited into their personal bank accounts.

The fraudulently indorsed checks were delivered to Wells Fargo for collection. Each of the checks submitted contained irregularities suggestive of fraud, including utilization of a postal return address mailing stamp instead of a deposit or similar banking stamp, sloppily handwritten entries on business checks, and personal indorsements on large reimbursement checks from insurance companies. Nonetheless, Zamano, Solis and their accomplice were permitted by Wells Fargo to cash the checks or deposit the funds into their respective personal bank accounts.

Newman was not a customer of Wells Fargo. None of the checks at issue was drawn upon Wells Fargo. Wells Fargo thus acted as a "depositary" and "collecting" bank, but not a "payor bank," within the meaning of the Commercial Code.[3]

### 2. Proceedings.

#### a. The Complaint.

Newman filed this action against Wells Fargo, as well as Zamano, Solis, Arreola and other defendants, on June 21, 1999. As it relates to Wells Fargo,

---

[3]The bank upon which the check is drawn and by which it is payable is referred to as the drawee or "payor bank." (§ 4105, subd. (2).) When a maker or drawer issues a check in favor of a payee, the bank to which the check is submitted may or may not be the payor bank. Regardless whether it is also the payor bank, the first bank to which a check is submitted for collection is called the "depositary bank." (§ 4105, subd. (2).) If the depositary bank is not also the payor bank, it will present the check to the payor bank either directly or through one or more "intermediary bank[s]," defined as any bank to which the check is transferred in the course of collection except the depositary bank and the payor bank. (§ 4105, subd. (4).) In this process any bank handling the check for collection, including the depositary bank but excluding the payor bank, is referred to as a "collecting bank." (§ 4105, subd. (5).)

the operative first amended complaint sought to recover damages on theories of common law negligence (ninth cause of action) and conversion under section 3420 (second cause of action) based on Wells Fargo's role as a depositary and collecting bank in the alleged scheme by Newman's employees to misappropriate checks though the use of fraudulent indorsements. Newman specifically alleged that the checks at issue were submitted to Wells Fargo under circumstances sufficiently suspicious to indicate fraud; that Wells Fargo negligently accepted checks with altered payees, forged indorsements, no indorsements and other irregularities; and that Wells Fargo, in the exercise of reasonable care, should have known of the irregularities and illegalities of the checks.

b. *Wells Fargo's Demurrer and Newman's Opposition.*

On October 6, 1999, Wells Fargo filed a demurrer and motion to strike. Wells Fargo argued that the Commercial Code superseded the common law cause of action for negligence by a bank that had paid a check over a forged indorsement. Wells Fargo additionally asserted that a bank owes no duty of care to a noncustomer such as Newman. Respecting the statutory conversion claim, Wells Fargo argued that no such cause of action exists for the 12 checks drawn by Newman. As to the remaining 15 checks identifying Newman as payee, Wells Fargo asserted that all the fraudulent indorsements were deemed effective pursuant to section 3405, that Wells Fargo is thus a holder in due course and that the conversion action consequently fails.

Newman filed an opposition. Relying primarily on *Sun 'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920], Newman contended that plaintiffs' common law negligence action is not precluded by the Commercial Code. Newman conceded that no conversion action exists for the 12 checks drawn by Newman, but argued that section 3405 did not bar the conversion claim for the checks identifying Newman as payee.

c. *The Trial Court's Ruling.*

On November 4, 1999 the trial court sustained Wells Fargo's demurrer without leave to amend. With respect to Newman's negligence claim, the trial court found that *Sun 'n Sand* was not applicable, held that Wells Fargo owed no duty to Newman and further held that the Commercial Code governed the transactions at issue and did not permit a cause of action for negligence against Wells Fargo. With respect to the statutory conversion claim, the trial court held that all of the allegedly fraudulent indorsements

were effective as to Wells Fargo within the meaning of section 3405 and, therefore, that no cause of action for conversion could be stated.[4]

   d.   *Newman's Notice of Appeal.*

Newman filed a notice of appeal on November 15, 1999, from the trial court's November 4, 1999 order sustaining the demurrer without leave to amend. An order of dismissal was thereafter filed on January 11, 2000. Wells Fargo served a notice of entry of judgment on January 18, 2000.

The November 4, 1999 order, not being a final order, is nonappealable. The notice of appeal was premature as of the date it was filed. However, Newman's notice of appeal was obviously intended to appeal the final order dismissing the entire case against Wells Fargo, which was finally filed on January 11, 2000. In addition, the parties have fully briefed the merits of Newman's appeal. Accordingly, the requisite good cause appears, and we shall treat Newman's notice of appeal as filed immediately after the January 11, 2000 order of dismissal. (Cal. Rules of Court, rule 2(c).)

## CONTENTIONS

Newman contends: the Commercial Code has not displaced common law negligence actions against collecting banks in cases involving fraudulent indorsements by employees; based on the facts alleged in the first amended complaint, Wells Fargo had a duty of care to Newman even though Newman was not a Wells Fargo customer; and the conversion claim under section 3420 is not barred by the statutory presumption that the indorsements on the checks submitted to Wells Fargo were effective.

## DISCUSSION

1.   *The Standard of Review.*

A demurrer tests the legal sufficiency of factual allegations in a complaint. (*Title Ins. Co. v. Comerica Bank—California* (1994) 27 Cal.App.4th 800, 807 [32 Cal.Rptr.2d 735].) A trial court's ruling sustaining a demurrer is erroneous if the facts alleged by the plaintiff state a cause of action under any possible legal theory. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151]; *Pollack v. Lytle* (1981) 120 Cal.App.3d 931, 939 [175 Cal.Rptr. 81].) Regardless of the title or label

---

[4]Because the demurrer was sustained without leave to amend, the motion to strike was deemed moot.

attached by the plaintiff to an alleged cause of action, if the factual allegations of the complaint state a cause of action on any available legal theory, that aspect of the complaint is good against a demurrer. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998), 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513]; *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].) To determine whether sufficient facts have been alleged to state a cause of action, we review the complaint de novo. (*Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 879.)

2. *The Commercial Code precludes a common law negligence action against banks taking checks fraudulently indorsed by dishonest employees.*

Section 1103 declares that the code is supplemented by "the principles of law and equity," but only if such principles are not "displaced by the particular provisions" of the Commercial Code. We agree with the trial court that section 3405[5] articulates a loss distribution scheme that applies to

---

[5]Section 3405 provides:

"(a)  In this section:

"(1)  'Employee' includes an independent contractor and employee of an independent contractor retained by the employer.

"(2)  'Fraudulent indorsement' means (A) in the case of an instrument payable to the employer, a forged indorsement purporting to be that of the employer, or (B) in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.

"(3)  'Responsibility' with respect to instruments means authority (A) to sign or indorse instruments on behalf of the employer, (B) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (C) to prepare or process instruments for issue in the name of the employer, (D) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (E) to control the disposition of instruments to be issued in the name of the employer, or (F) to act otherwise with respect to instruments in a responsible capacity. 'Responsibility' does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

"(b)  For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

"(c)  Under subdivision (b), an indorsement is made in the name of the person to whom an instrument is payable if (1) it is made in a name substantially similar to the name of that

fact patterns such as alleged by Newman and therefore displaces common law negligence actions.

In arguing that a common law negligence claim against Wells Fargo is not precluded by the Commercial Code, Newman places primary reliance on the Supreme Court's decision in *Sun 'n Sand, Inc. v. United California Bank, supra,* 21 Cal.3d 671, which permitted the plaintiffs to proceed with a negligence cause of action against a bank that had accepted for payment altered checks from a dishonest employee. *Sun 'n Sand,* however, is expressly—and narrowly—limited to the particular factual allegations then before the Supreme Court. In addition, the case was decided well before the 1993 amendments to article 3 of the Commercial Code added a new section 3405,[6] which is the "particular provision" of the code that displaces Newman's common law tort action for negligence.

.a. *The Supreme Court's decision in Sun 'n Sand.*

In *Sun 'n Sand, Inc. v. United California Bank, supra,* 21 Cal.3d 671, an employee prepared and obtained authorized signatures on checks for small sums made payable to United California Bank (UCB) drawn on her employer's bank account with Union Bank. The employee then altered the checks by increasing the sums payable. Upon presentation of the altered checks, UCB permitted the proceeds of the checks to be deposited into the employee's personal account maintained at UCB. When the employer discovered the fraudulent activity, it sued UCB not only for breach of the warranties of title and against material alteration set forth in the Commercial Code, but also for common law negligence. In this regard, Sun 'n Sand asserted that UCB had breached its duty of care in permitting checks on which the bank was named as payee to be deposited in the personal account of the company's employee. (*Id.* at p. 692.)

The Supreme Court reversed the trial court's order dismissing Sun 'n Sand's negligence cause of action, holding that UCB had a limited duty of inquiry based on the specific facts alleged and further holding that the common law negligence cause of action was not superseded by the Commercial Code. (*Sun 'n Sand, Inc. v. United California Bank, supra,* 21 Cal.3d at pp. 692-696.) "We agree that an attempt by a third party to divert the proceeds of a check drawn payable to the order of a bank to the benefit of one other than the drawer or drawee suggests a possible misappropriation.

---

person or (2) the instrument, whether or not indorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person."

[6]Former section 3405, addressed in *Sun 'n Sand, Inc. v. United California Bank, supra,* 21 Cal.3d at page 696, in amended form is now section 3404.

Accordingly, we conclude that Sun 'n Sand's allegations define circumstances sufficiently suspicious that UCB should have been alerted to the risk that Sun 'n Sand's employee was perpetrating a fraud. By making reasonable inquiries, UCB could have discovered the fraudulent scheme and prevented its success." (*Id.* at pp. 694-695.)

The Supreme Court emphasized, however, that the duty it was recognizing was "narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." (*Sun 'n Sand, Inc. v. United California Bank, supra,* 21 Cal.3d at p. 695.)

In rejecting UCB's assertion that the Commercial Code precluded Sun 'n Sand's negligence claim, the Supreme Court acknowledged that former section 3405, which involved issuance of checks to payees intended to have no interest in them, contemplated that losses resulting from certain fraudulent employee behavior should be risks of the employer's business rather than the employer's bank. (*Sun 'n Sand, Inc. v. United California Bank, supra,* 21 Cal.3d at p. 696.) But the Supreme Court concluded that this provision of the Commercial Code did not bar the plaintiffs' tort action for negligence because it was not intended to apply to the specific factual situation before it—that is, when the payor bank has been presented with checks naming the bank itself as payee: "The comments [to former section 3405] assume, however, that such checks will never be delivered to the named payees, whether or not such payees are real persons or entities. We perceive this supposition to be critical to the loss allocative function of section 3405. . . . It is clear therefore that the balance struck under section 3405 has no application in the present context and does not bar Sun 'n Sand from pursuing its remedies in tort." (*Ibid.*)

 b. *Revised article 3 of the Commercial Code provides a comprehensive framework for allocating losses when a check bearing a fraudulent indorsement is paid or taken for collection.*

Effective January 1, 1993, the California Legislature adopted the substantial revisions to division 3 of the Uniform Commercial Code proposed by the National Conference of Commissioners on Uniform State Laws. (Stats. 1992, ch. 914, p. 4339.) The Conference Committee Report on Senate Bill No. 833 (1991-1992 Reg. Sess.) explains that this legislation "was introduced to effectuate the recommendation of the California Commission on Uniform State Laws that the revision of Article 3, with conforming and miscellaneous amendments to Articles 1 and 4, of the Uniform Commercial

Code promulgated by the National Conference of Commissioners on Uniform State Laws be adopted in California." (Conf. Com. Rep. on Sen. Bill No. 833 (1991-1992 Reg. Sess.) recorded in Sen. Daily J., Aug. 9, 1992, p. 7350; *id.*, Assem. Daily J., Aug. 10, 1992, p. 8706; see 23A West's Ann. Cal. U. Com. Code (2001 supp.) foll. § 1201, p. 26.)

The Conference Committee also declared that, with the exception of only revised comments to sections 4304, 4402 and 4406, "the Official Comments of the National Conference to these changes in the Uniform Commercial Code reflect the intent of the Conference Committee in approving Senate Bill 833." (Conf. Com. Rep. on Sen. Bill No. 833 (1991-1999 Reg. Sess.) recorded in Sen. Daily J., Aug. 9, 1992, p. 7350; *id.*, Assem. Daily J., Aug. 10, 1992, p. 8706; see 23A West's Ann. Cal. U. Com. Code, *supra*, foll. § 1201, p. 26.) Accordingly, revised article 3 is to be "interpreted and applied in accordance with the official comments of the National Conference of Commissioners on Uniform State Laws." (*Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1121 [78 Cal.Rptr.2d 478].)

The 1993 amendments to division 3 include the adoption of a *new* section 3405, expressly governing the rights and liabilities of persons paying or taking an instrument bearing a fraudulent indorsement made by an employee who has been given "responsibility" by his or her employer for such instruments.[7] Section 3405 covers both forged indorsements made in the name of the employer to instruments payable to the employer (§ 3405, subd. (a)(2)(A)) and indorsements made in the name of payees of instruments issued by the employer. (§ 3405, subd. (a)(2)(B).)[8] "Responsibility" is a specifically defined term and includes the authority to sign or indorse checks on behalf of the employer, to process checks received for bookkeeping purposes and to prepare or process checks for issue in the name of the employer. (§ 3405, subd. (a)(3).)

With respect to both categories of indorsements, section 3405, subdivision (b) provides that, if made by an employee entrusted with responsibility for the check, "the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person."

---

[7]"[The] section applies to instruments generally but normally the instrument will be a check." (Official Comments on U. Com. Code, com. 1, reprinted in 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 3405 p. 75.)

[8]This second category includes cases covered by former section 3405, subdivision (1)(c), the section addressed by the Supreme Court in *Sun 'n Sand.* "The scope of Section 3-405 in revised Article 3 is, however, somewhat wider. It covers some cases not covered by former Section 3-405(1)(c) in which the entrusted employee makes a forged indorsement to a check drawn by the employer." (Official Comments on U. Com. Code, com. 1, reprinted in 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 3405, p. 75.)

Section 3405 thus adopts the fundamental principle that the risk of loss for fraudulent indorsements by employees entrusted with responsibility for checks should fall on the employer rather than the bank that takes the check or pays it. Section 3405 imposes that loss on the employer whether or not the employer was negligent. (Official Comments on U. Com. Code, com. 1, reprinted in 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 3405, p. 75.)

This loss allocation principle, however, is tempered by the doctrine of comparative negligence: Section 3405, subdivision (b) provides that, if the party paying the instrument or taking it for collection "fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." "Ordinary care" is defined in section 3103, subdivision (7), as "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged."[9] As explained in the Official Comment to the corresponding Uniform Commercial Code provision, "Section 3-405 is based on the belief that the employer is in a far better position to avoid the loss by care in choosing employees, in supervising them, and in adopting other measures to prevent forged indorsements on instruments payable to the employer or fraud in the issuance of instruments in the name of the employer. If the bank failed to exercise ordinary care, subsection (b) allows the employer to shift loss to the bank to the extent the bank's failure to exercise ordinary care contributed to the loss." (Official Comments on U. Com. Code, com. 1, reprinted in 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 3405, p. 75.)

Because the first amended complaint alleges that Newman's bookkeeper and office assistant were responsible for billing, accounts payable, accounts receivable, bank deposits and related financial matters, they are employees entrusted with responsibility for checks within the meaning of section 3405. The comprehensive loss allocative function of section 3405, therefore, is applicable to the factual circumstances presented: If Wells Fargo, the depositary or collecting bank taking the checks, acted in good faith and with ordinary care, the entire loss falls on Newman regardless of whether Newman was negligent. To the extent Newman can prove that Wells Fargo failed to exercise ordinary care and can further prove that such lack of care

---

[9]Section 3103, subdivision (7) also provides: "In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this division or Division 4 (commencing with Section 4101)."

contributed to the loss, Newman may recover from Wells Fargo pursuant to section 3405 to the extent that bank's failure contributed to the loss.

The balance struck under section 3405 fully applies in the present context. The "particular provisions" of that section are controlling. We therefore conclude that the common law cause of action for negligence has been displaced. (§ 1103.)

3. *The first amended complaint states a cause of action under section 3405, subdivision (b).*

Section 3405 expressly provides that an employer in Newman's position can recover from a depositary or collecting bank to the extent the bank's failure to exercise ordinary care contributes to the loss: "If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." (§ 3405, subd. (b).) Failure to exercise ordinary care is to be determined by examining "all the facts relating to the bank's conduct with respect to the bank's collection of the check." (Official Comments on U. Com. Code, com. 4, reprinted at 23B West's Ann. Cal. U. Com. Code, *supra*, foll. § 3405, p. 76.) Those facts must be measured against "reasonable commercial standards prevailing in the area in which the person is located, with respect to the business in which the person is engaged." (§ 3103, subd. (7).)

Although Newman has no cause of action for common law negligence, the factual allegations in the ninth cause of action of the first amended complaint adequately plead a cause of action under section 3405, subdivision (b) for recovery based on Wells Fargo's failure to exercise ordinary care in taking the checks for collection. Newman specifically alleges that Wells Fargo "owed a duty to the plaintiffs to exercise ordinary care in inspecting, negotiating and making a reasonable inquiry" with respect to the checks submitted by Newman's employees. Identification of section 3405, rather than the common law, as the source of that duty is not necessary for Newman to defeat Wells Fargo's demurrer. (See *Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 879 [demurrer is not properly sustained if the facts alleged by the plaintiff state a cause of action under any possible legal theory].)

Newman further alleges that the bank breached its obligation to exercise ordinary care when it allowed Newman's employees to cash or deposit

checks in their personal accounts notwithstanding "suspicious circumstances indicative of fraud." Specific examples of those "suspicious circumstances" and "irregularities" are pleaded. Finally, Newman alleges, albeit in rather conclusory terms, that, as a proximate result of Wells Fargo's failure to act with ordinary care, Newman was damaged. The ninth cause of action thus contains sufficient factual allegations to establish a claim under section 3405: duty, breach, causation and damages are all alleged. (See *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 286-287 [73 Cal.Rptr.2d 596]; see generally 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 537, pp. 624-625.)

4. *The demurrer to the cause of action for conversion was properly sustained.*\*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

The judgment of dismissal is reversed. The trial court shall enter a new order overruling the demurrer to the ninth cause of action of the first amended complaint. The order of dismissal as to the second cause of action is affirmed. Newman is to recover costs on appeal.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied March 6, 2001.

---

\*See footnote, *ante*, page 73.