In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4134

TRAVELERS CASUALTY & SURETY COMPANY
   OF AMERICA, INC.,

*Plaintiff-Appellant,*

v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and
   MERRILL LYNCH, PIERCE, FENNER & SMITH INC.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 4590—**Rebecca R. Pallmeyer**, *Judge.*

———————

ARGUED OCTOBER 16, 2006—DECIDED MARCH 13, 2007

———————

Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* Kenneth Zahner was the chief
financial officer of a company named Volwood. He wrote
checks on Volwood's bank account payable to Northwest-
ern Mutual and to Merrill Lynch, but directed North-
western to use the money to buy him a life insurance policy
and Merrill Lynch to deposit the money in his personal
account with Merrill Lynch. Volwood owed no money to
either defendant; nor had it authorized Zahner to transfer

these corporate funds to himself. Zahner was embezzling. He is now in prison.

Travelers, the plaintiff, had insured Volwood against losses from employee embezzlers. So after receiving the insurance proceeds from Travelers, Volwood assigned to it whatever rights Volwood might have to shift the loss to the defendants on the ground that the defendants had failed to alert Volwood to the suspicious circumstances of the deposits. Travelers then filed this suit against the defendants in the federal district court in Chicago, basing federal jurisdiction on diversity. The parties agree that the substantive issues in the case are governed by California law, and as usual we defer to their choice. *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991). The district judge dismissed the claim against Northwestern Mutual on the ground that the amount in controversy was below the statutory minimum, since the total amount of the checks that Zahner had written on Volwood's account to Northwestern Mutual had been only $17,000. The judge dismissed the claim against Merrill Lynch as barred by the statute of limitations.

If the judge was right about the amount in controversy, the claim against Northwestern Mutual must indeed be dismissed for want of federal subject-matter jurisdiction; it cannot be retained as a supplement to the claim against Merrill Lynch, because it arises out of a different transaction. 28 U.S.C. § 1367(a); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 898, 902 (7th Cir. 1997); *Highway Equipment Co. v. FECO, Ltd.*, 469 F.3d 1027, 1038-39 (Fed. Cir. 2006); *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000). Travelers argues, however, that the amount in controversy is not $17,000 but is instead the present value of a $700,000 life insurance policy (actually two policies,

but we'll suppress that irrelevant detail) that Zahner bought from Northwestern Mutual with the money that he had embezzled from Volwood.

Zahner didn't actually *want* life insurance. He wanted cash. Two years after obtaining the life insurance policy, he surrendered it to Northwestern Mutual in exchange for its cash surrender value, some $13,000. So not only was the loss to Volwood from Zahner's embezzlement of the company's account with Northwestern Mutual a meager $17,000, but the gain to Northwestern Mutual was even smaller ($4,000—the $17,000 in premium payments that it received from Volwood minus the almost $13,000 that it paid Zahner when he surrendered the policy). Travelers seeks, however, to impress a constructive trust on the policy in its favor as Volwood's assignee, on the ground that it is the beneficial owner of the policy. "Constructive trust" is legalese for seeking to wrest ownership of a thing from its nominal owner, which is to say the holder of legal title. It is not a real trust; in law, "constructive" often and here means "fictional."

Now it is far from certain, and indeed unlikely, that the present value of a $700,000 policy of insurance on the life of a man age 44 (as Zahner now is) exceeds $75,000. In a competitive market, one expects the cost of a future benefit to be the actuarial equivalent of that benefit: $17,000 would thus be the present value of the insurance policy. No doubt the assumption can be challenged. The life expectancy of a 44-year-old American male is 33.7 years, and the present value of $700,000 to be received that far hence is $28,000 at a discount rate of 10 percent. Well, that is still a good deal less than $75,000. But 10 percent is a guess; we do not know what discount rate would be appropriate; at a rate of 5 percent, the present

value of a $700,000 insurance policy leaps to almost $140,000—though that would raise acutely the question why the insurance company would accept $17,000 to confer such a benefit. But maybe the insurance company has a higher discount rate than an individual insured. Still another complication is that $17,000 was just the amount of premiums that Zahner paid during the first two years of the insurance policy. Travelers would have to keep paying premiums to keep the policy in force, and that would reduce the policy's net present value. But maybe Travelers hopes somehow to force Zahner to pay the premiums, and perhaps even reimburse it for the $17,000.

All this is a great muddle. But since satisfaction of the jurisdictional minimum in the diversity statute requires merely that the plaintiff have a colorable, which is to say a nonneglible, prospect of being able to recover that amount in a trial, e.g., *Freeman v. Sports Car Club of America, Inc.*, 51 F.3d 1358, 1362 (7th Cir. 1995), we shall give Travelers the benefit of the doubt and assume, though with con- siderable reluctance, that if it does have a constructive trust in the insurance policy, it has satisfied the amount in controversy requirement. That is a giant if. But it is important to keep jurisdictional issues separate from the merits of a plaintiff's claim. Otherwise, suits that lacked merit would be dismissed on jurisdictional grounds, allowing the plaintiff to start over in state court. *Johnson v. Wattenbarger*, 361 F.3d 991, 992-94 (7th Cir. 2004).

Remember that Travelers' (that is to say Volwood's) loss as a result of Northwestern Mutual's alleged negligence in failing to prevent Zahner's embezzlements was only $17,000. And while a tort victim can seek restitution of the defendant's gain as an alternative to seeking damages for

his own loss, on the theory that making the wrongdoer's wrongful conduct worthless to him is a good method of deterring such conduct, e.g., *In re African-American Slave Descendants Litigation*, 471 F.3d 754, 760 (7th Cir. 2006); *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 576 (7th Cir. 2004); Douglas Laycock, "The Scope and Significance of Restitution," 67 *Tex. L. Rev.* 1277, 1288-90 (1989), Northwestern Mutual's net gain was, as we know, even less.

The meagerness of both Travelers' loss and Northwestern Mutual's gain is the reason Travelers is trying to get its hands on the $700,000 life insurance policy that Northwestern Mutual issued to Zahner; more precisely, to force Northwestern Mutual to issue an identical policy on Zahner's life to Travelers. The imposition of a constructive trust is a standard equitable remedy in restitution cases, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-14 (2002), but it requires the plaintiff to trace property that is rightfully his to the defendant. A life insurance policy is property, but there is no life insurance policy on which to impress a constructive trust in this case because Zahner, the owner of the policy, surrendered it in exchange for cash. And while when a defendant takes property that is rightfully the plaintiff's and then sells it the plaintiff can seek to impress a constructive trust on the proceeds, *United States v. Pegg*, 782 F.2d 1498, 1500 n. 2 (9th Cir. 1986) (California law); 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.3(2), pp. 589-90 (2d ed. 1993), the proceeds here were a meager $4,000—way less than Travelers' loss. A constructive trust of the proceeds would yield Travelers less than its damages remedy would.

Anyway Travelers could not be the beneficiary of a policy on Zahner's life, even if there were such a policy,

because it has no insurable interest in that life. "A man cannot take out insurance on the life of a total stranger, nor on that of one who is not so connected with him as to make the continuance of the life a matter of some real interest to him." *Connecticut Mutual Life Ins. Co. v. Schaefer*, 94 U.S. 457, 460 (1877); see also *Mortenson v. National Union Fire Ins. Co.*, 249 F.3d 667, 672 (7th Cir. 2001); *Harley-Davidson v. Minstar, Inc.*, 41 F.3d 341, 343 (7th Cir. 1994); *Herman v. Provident Mutual Life Ins. Co.*, 886 F.2d 529, 533 (2d Cir. 1989). "A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end." *Grigsby v. Russell*, 222 U.S. 149, 154 (1911) (Holmes, J.).

But as Holmes went on to explain, this rule does not preclude an insured from voluntarily assigning the policy: "The danger that might arise from a general license to all to insure whom they like does not exist. Obviously it is a very different thing from granting such a general license, to allow the holder of a valid insurance upon his own life to transfer it to one whom he, the party most concerned, is not afraid to trust." *Id.* at 155. Such assignments are common. We learn from a recent newspaper article that "two years ago, Mr. Margolis bought a large life insurance policy. Now, he's considering selling it to a group of investors, a deal that should give him as much as $2 million to enjoy in his final years. In return, the investors will get the policy's $7 million payout when he dies—which they hope will be soon, so they can stop paying his premiums . . . . Such policies are known as speculator-initiated life insurance, or 'spin-life' policies. Investors estimate that spin-life policies worth as much as $13 billion will change hands next year." Charles Duhigg, "Late in Life: Finding a Bonanza in Life Insurance," *N.Y.*

*Times*, Dec. 17, 2006, p. 1. Travelers, however, is asking that Northwestern Mutual be compelled to issue it a policy on Zahner's life even though Travelers has no insurable interest in Zahner and Zahner has not consented to having his life insured for the benefit of Travelers.

There is still more that is wrong with Travelers' claim for a constructive trust in the insurance policy. The imposition of a constructive trust is, as we said, a device for obtaining restitution. And restitution is available only in cases in which the defendant's wrong has enabled the defendant to profit at the plaintiff's expense. See, e.g., *Cross v. Berg Lumber Co.*, 7 P.3d 922, 935-36 (Wyo. 2000); *Warren v. Century Bankcorporation, Inc.,* 741 P.2d 846, 851-52 (Okla. 1987); *Nelson v. Serwold*, 687 F.2d 278, 281 (9th Cir. 1982); 1 Dobbs, *supra*, § 4.1(1), p. 555. That is why restitution is not awarded in a run-of-the-mill accident case; in such a case the defendant's wrong confers no benefit on him. See *Restatement of Restitution*, ch. 7, introductory note (1937). Northwestern Mutual's alleged wrong did not result in Northwestern Mutual's obtaining an insurance policy. It resulted in its obtaining $4,000. Since the present value of a $700,000 insurance policy on Zahner's life is more than $4,000, imposing a constructive trust in such a policy in favor of Travelers (the only relief it seeks) would give Travelers a benefit greater than Northwestern Mutual's wrongful gain.

So Travelers' claim against Northwestern Mutual fails, and we move on to its claim against Merrill Lynch. The claim is that Merrill Lynch was negligent, and, worse, violated its fiduciary duty to Volwood, by allowing Zahner to deposit a check issued by Volwood to Merrill Lynch in Zahner's personal account. Section 3-307 of the Uniform Commercial Code, in force in California, makes any taker of a negotiable instrument (such as a check)—and

thus Merrill Lynch—liable to the drawer of the instrument
if the taker knows that the instrument is signed by a
fiduciary of the drawer (an agent, as Zahner clearly
was) yet it is deposited in the fiduciary's personal account
rather than in his principal's account.

Travelers might well have a good claim (cf. *Travelers
Casualty & Surety Co v. Wells Fargo Bank N.A.,* 374 F.3d 521,
525-26 (7th Cir. 2004)) were it not for the statute of limita-
tions for suits under section 3-307, which is three years.
UCC § 3-118(g). The last transfer from Volwood's bank
account to Zahner's account with Merrill Lynch was
made in 1998; the suit was not filed until 2003. But Travel-
ers contends that Volwood did not discover the fraud
until 2001, and in the present posture of the case we
must assume that the contention is true.

Merrill Lynch ripostes that a claim under section 3-307
accrues when the fraud is complete, not when it is discov-
ered, because section 3-118(g) does not mention discovery.
But courts often graft a discovery rule onto a statute of
limitations that does not mention discovery. E.g., *Field v.
Century 21 Klowden-Forness Realty*, 63 Cal. App. 4th 18,
25 (1998); *Strasberg v. Odyssey Group, Inc.*, 51 Cal. App. 4th
906, 915-16 (1996); *Hopkins v. Dow Corning Corp.*, 33 F.3d
1116, 1120 (9th Cir. 1994) (California law); *Fidelity National
Title Ins. Co. v. Howard Savings Bank*, 436 F.3d 836, 839-
40 (7th Cir. 2006). The Uniform Commercial Code is not
self-contained. It was promulgated against an ever-chang-
ing background of common law principles on which
judges draw to complete the law's edifice. The Code itself
states that "unless displaced by the particular provisions
of the [Code], the principles of law and equity, including
the law merchant and the law relative to capacity to
contract, principal and agent, estoppel, fraud, misrepresen-

tation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." UCC § 1-103(b); see California Commercial Code § 1103(b); *Roy Supply, Inc. v. Wells Fargo Bank*, 39 Cal. App. 4th 1051, 1058 (1995) ("the general law applies when a case is not covered by statute"). If a discovery rule is a sensible graft onto section 3-118(g), either generally or with respect to claims under section 3-307, grafted it will be.

In favor of the graft is that a plaintiff can hardly prepare and file a suit if he doesn't know he's been injured. Against the graft in a case such as this is the length of the statutory period and the fact that the kind of injury that Volwood sustained occurs in an information-rich environment, as the weapon that inflicted an injury was the victim's own check. There is the additional fact that tolling doctrines—principally equitable tolling and equitable estoppel—enable a plaintiff to extend the statute of limitations in exigent circumstances. The decisive consideration is that someone who fails to discover within the statutory period that his property has been stolen has only himself to blame for the belatedness of his discovery. So we are not surprised that the overwhelming majority of cases reject a discovery rule for conversion of a negotiable instrument. E.g., *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 616, 620-24 (Tenn. 2002); *Menichini v. Grant*, 995 F.2d 1224, 1229-30 (3d Cir. 1993); *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 678 N.E.2d 322, 325-26 (Ill. App. 1997).

In any event the rule would not help Travelers. A discovery rule postpones accrual not to when the claim is discovered, but only to when the claim should have been discovered. *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914,

919-20 (Cal. 2005); *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999); *Borello v. United States Oil Co.*, 388 N.W.2d 140, 145-46 (Wis. 1986); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682, 688 (7th Cir. 2004); *Restatement (Second) of Torts* § 899, comment e (1977). Volwood should have discovered the embezzlement long before 2001. Elementary controls over employees, such as Zahner, who have check-writing authority would have matched the checks he wrote on Volwood's bank account to Northwestern Mutual and Merrill Lynch with debts that Volwood owed those companies, and quickly revealed that there were no debts, so that the money was either being pocketed by the two payees by mistake or had been diverted into someone else's pocket. Cf. UCC § 4-406(c) (duty of bank's customer to be reasonably prompt in notifying bank of any discrepancy between the bank's statement and the customer's records—a provision inapplicable to this case because Volwood was not a customer of Merrill Lynch). Volwood was of course responsible for the laxness of its employees who failed to notice the defalcation. *Sun'n Sand, Inc. v. United California Bank*, 582 P.2d 920, 941 (Cal. 1978).

Such laxness is a general feature of cases in which the victim of conversion tries to sue after the statute of limitations (dated from the conversion) has run, and it makes us wonder whether the cases we cited earlier reject, or exemplify, the discovery rule. We need not pursue that issue.

Travelers also tries to get out from under the statute of limitations in section 3-118(g) by recharacterizing its claim against Merrill Lynch as something other than a claim under section 3-307, such as a common law fraud claim. Since section 3-307 fits the facts of the case to a T, no

room is left for recharacterizations intended to circum-vent the statute of limitations applicable to such claims. It is one thing to fill gaps in the Uniform Commercial Code and another to contradict it by calling a UCC claim some-thing else. *Lee Newman, M.D., Inc. v. Wells Fargo Bank*, 87 Cal. App. 4th 73, 79-80 (2001); *Stenseth v. Wells Fargo Bank*, 41 Cal. App. 4th 457, 465-66 (1995); *United Catholic Parish Schools v. Card Services Center*, 636 N.W.2d 206, 213 (Wis. App. 2001); A. Brooke Overby, "Check Fraud in the Courts After the Revisions to U.C.C. Articles 3 and 4," 57 *Ala. L. Rev.* 351, 391-92 (2005).

The judgment of the district court is modified to make the dismissal of the plaintiff's claim against Northwestern Mutual a dismissal on the merits rather than for want of federal jurisdiction, and as so modified is

AFFIRMED.

RIPPLE, *Circuit Judge*, concurring in the judgment.   In my view, the district court correctly dismissed the case against Northwestern for lack of jurisdiction. In all other respects, I agree with the disposition reached by my colleagues.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*