[No. 33463.   Department Two.   May 24, 1956.]

ROY E. THOMAS, SR., *et al., Respondents,* v. JOHN CASEY *et al., Appellants.*[1]

'Reported in 297 P. (2d) 614.

*Cheney & Hutcheson, Lauren W. Dobbs, and Hughes & Jeffers*, for appellants.

*Hugh B. Horton*, for respondents.

HILL, J.—This is an appeal by the three defendants, John Casey, Edward Foster, and Thomas Callahan, from a judgment for $28,059.30 entered against them on a verdict of the jury in an action for personal injuries and property damage resulting from an automobile collision. The only unusual question presented is whether the defendant Foster was chargeable with negligence and, if so, on what theory.

The collision occurred June 5, 1953, at about nine-fifteen p.m., on an east-west highway. The blacktopped pavement constituting the roadway, or the traveled portion thereof, was approximately twenty-two feet in width, with a five-foot shoulder on each side. The westbound car of defendant Foster had gone off the highway to its right and into a ditch, and had come to rest headed in a northwesterly direction.

with one rear wheel on or just off the north shoulder, which was described as "sloping and tricky."

Defendants Casey and Callahan, traveling westward in Casey's pickup truck with Callahan driving, stopped and volunteered to tow the car back onto the road. There was no request for aid by Foster, and no offer of compensation; the offer of assistance was a purely voluntary gesture. Casey got out of the truck, and Callahan turned it so that the back of the truck was toward the back of the Foster car, the truck being partly on the north shoulder of the highway and partly in the westbound traffic lane, facing south-easterly; there was testimony that it occupied all but two or three feet of the westbound traffic lane. No flares were put out. (None were available, although trucks are required by law to carry them. Laws of 1947, chapter 267, § 7, p. 1143 (Rem. Supp. 1947, § 6360-32a [cf. RCW 46.40.210])). The truck's headlights and left blinker light (installed for the purpose of signaling an intention to turn) were visible, at least to some extent, to traffic approaching from the east. The only other attempt to warn westbound traffic that its lane of travel was blocked was made by defendant Callahan, who, just before the collision, stood beside the truck facing east and holding a lighted flashlight.

A tow rope from the Casey truck was used to connect the rear end of the truck with the rear end of the Foster car. On the first attempt to pull the car out of the ditch, the rope broke. It was then doubled, and defendant Casey was in the act of fastening it to his truck in preparation for another towing attempt when warned by Callahan of an impending collision. The plaintiffs, Mr. and Mrs. Roy E. Thomas, Sr., westbound in their pickup truck, crashed into the left front of the Casey truck. Mrs. Thomas sustained very serious injuries and their truck was damaged.

The trial court instructed the jury—and in view of the undisputed fact of the blocking of practically all of the westbound traffic lane with no attempt at an adequate warning to oncoming westbound traffic, we think properly—that Casey and Callahan were negligent as a matter of law (*Newton v. Pacific Highway Transport Co.* (1943), 18 Wn.

(2d) 507, 139 P. (2d) 725) and that contributory negligence by Mr. and Mrs. Thomas was the only defense available to them.

The issue of defendant Foster's negligence was submitted to the jury by an instruction based upon 4 Restatement, Torts, 435, § 876, which reads as follows:

"For harm resulting to a third person from the tortious conduct of another, a person is liable if he

"(a) orders or induces such conduct, knowing of the conditions under which the act is done or intending the consequences which ensue, or

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

"(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

We agree with defendant Foster that "(a)" has no application, as he neither ordered nor induced the conduct of Casey and Callahan. Despite the protestations of defendant Foster that he in no wise assisted Casey and Callahan and was merely a useless though interested bystander, we are satisfied that there was sufficient evidence to make the issue of his substantial assistance under "(c)" a jury question. Subsection "(b)" seems clearly to apply to the present case; Foster knew that the conduct of Casey and Callahan was negligent and a breach of duty to other users of the highway, and, if he did not give substantial assistance, his conduct certainly gave them encouragement to proceed as they were doing. That he did not speak words of encouragement may be conceded, but he said nothing to discourage them; a situation existed where actions speak louder than words. His failure to object to or prohibit the doing of an obviously negligent and unlawful act was tacit approval and encouragement to Casey and Callahan to continue in their negligent and unlawful course of conduct. As Casey put it, "I know I wasn't going to start pulling out a man's car unless he wanted me to."

However, we consider the propriety of the instruction based on 4 Restatement, Torts, 435, § 876, immaterial, be-

cause, despite the wide scope of the arguments in the briefs, we are not here concerned with a question of vicarious liability or imputed negligence.

Great stress is placed upon the facts that Foster did not ask Casey and Callahan to endeavor to extricate him from his predicament; that he had nothing to do with their turning the Casey truck around and placing it in position across the road; that he gave no signals or directions to the truck driver; and that he had no authority or right of control over the actions of Casey and Callahan. It is urged that he did nothing except get into his car during the actual towing operation, to put the car into reverse gear and aid in its backward progress (if one can progress backwards).

We agree that there is here no liability on the theory of *respondeat superior,* there being no relationship of principal-agent or employer-employee; nor any right to control the actions or activities of Casey and Callahan (with the exception of what might be called the "right of veto," to which we will hereinafter refer). However, we cannot agree that, under the circumstances, Foster owed no duty to the plaintiffs and other users of the highway. The highway was being obstructed in his presence and for his benefit, with no flares, fusees, or other adequate method of warning oncoming traffic in the blocked traffic lane. Whether, under such circumstances, he could have delegated the performance of his duty to safeguard other users of the highway to Casey and Callahan had they in fact been independent contractors, is likewise not a matter for our present concern. They were not independent contractors; they were but volunteers.

■ *Foster at all times had possession and control of his car.* He could have, and admitted that he would have, stopped Casey and Callahan from doing anything that threatened to damage his car. He testified that he watched carefully to make certain that Callahan did not back the truck into his car. He could have and should have refused to permit them to use methods which he knew to be negligent and unlawful in the attempt to remove his car from the ditch (the "right of veto" to which we have heretofore referred). In the light of his testimony that he was doing

nothing useful except during the actual attempt at towing, he could at least have gone eastward and signaled approaching traffic with a flashlight. Doing nothing when action is demanded can constitute negligence. We do not hold that this would have absolved him from negligence in permitting Casey and Callahan to proceed as they were doing, but it might have prevented the collision. We mention the fact that he did not give a warning merely to emphasize the lack of any attempt on his part to warn westbound traffic of a dangerous situation, which it was clearly his duty to do, particularly if, as he insists, he rendered no "substantial assistance" to Casey and Callahan by remaining where he was.

■ If Foster failed to do what the ordinarily prudent and cautious person would have done under the circumstances, he was negligent. *Fink v. Dixon* (1955), 46 Wn. (2d) 794, 797, 285 P. (2d) 557; *Severns Motor Co. v. Hamilton* (1950), 35 Wn. (2d) 602, 214 P. (2d) 516. And, inasmuch as it appears that reasonable men must agree that he did so fail, his negligence is established as a matter of law. *Newton v. Pacific Highway Transport Co., supra; Emanuel v. Wise* (1941), 11 Wn. (2d) 198, 199, 118 P. (2d) 969; *Hynek v. Seattle* (1941), 7 Wn. (2d) 386, 398, 111 P. (2d) 247.

■ Unless it appeared that Casey and Callahan would have proceeded with the work of removing Foster's car over his protests and his insistence that they desist from a negligent and unlawful act, Foster's negligence was a proximate cause of the collision. See *O'Neil v. Gruhn* (1938), 197 Wash. 557, 85 P. (2d) 1064; *Seibly v. Sunnyside* (1934), 178 Wash. 632, 35 P. (2d) 56; *Gabrielsen v. Seattle* (1928), 150 Wash. 157, 152 Wash. 700, 272 Pac. 723, 278 Pac. 1071, 63 A. L. R. 200, 207. See instruction No. 6, approved in *Wymer-Harris Constr. Co. v. Glass* (1930), 122 Ohio St. 398, 171 N. E. 857, 69 A. L. R. 517. It is clear from Casey's statement, heretofore quoted, that he would have desisted from his efforts to extricate the car had Foster requested him to do so.

Since we conclude that Foster's actionable negligence was, like that of Casey and Callahan, established as a matter

of law, contributory negligence by the plaintiffs was likewise his only defense.

The defendants vigorously urge the plaintiffs' contributory negligence as a matter of law. They point out that a considerable number of westbound cars, without difficulty or mishap, passed the place where the westbound traffic lane was partially obstructed by the Casey truck. They insist that, while the plaintiffs' speed may have been within the legal limit, it was excessive under the conditions then and there existing; and that plaintiff Roy E. Thomas, Sr., was paying no attention to objects directly in front of him, else he, too, would have avoided the Casey truck.

The cases relied upon by the defendants in which it was held that there was contributory negligence as a matter of law by drivers who ran into vehicles parked or standing on the highway, are distinguishable from the present case on their facts. The plaintiffs here were unfamiliar with the highway; they were confronted with and bothered by the headlights of a steady stream of cars coming from the west; some of the approaching drivers lowered their lights and some did not. Plaintiff Roy E. Thomas, Sr., testified that, while he probably saw the lights of the Casey truck, which were directed somewhat diagonally across the road, he did not realize that there was a car on his side of the road until he was within one hundred to one hundred twenty-five feet of the Casey truck. Under such conditions, *Brauns v. Housden* (1936), 186 Wash. 149, 56 P. (2d) 1313, seems a more appropriate authority.

Nor was there anything to give Thomas notice that a stationary vehicle was occupying part or all of the driving area and shoulder ahead. See *Jess v. McNamer* (1953), 42 Wn. (2d) 466, 471, 255 P. (2d) 902, and cases cited.

We held that contributory negligence was a question for the jury in a case much like the present one. In that case, the defendants were held to be negligent as a matter of law because of the way they had parked their truck on the highway, although the plaintiff had ample room to pass but may have been blinded by the lights of another vehicle. *Newton v. Pacific Highway Transport Co., supra.*

■ We are unable to say that the contributory negligence of Mr. Thomas was so clearly shown that reasonable minds could not reach different conclusions with reference thereto. Contributory negligence was consequently an issue for the jury. *Newton v. Pacific Highway Transport Co., supra*; *Fosdick v. Middendorf* (1941), 9 Wn. (2d) 616, 115 P. (2d) 679.

Taken together, the court's instructions on contributory negligence were not erroneous; nor did the trial court err in refusing defendant Foster's requested instructions on that issue, at least one of which was slanted quite heavily against the plaintiffs.

Defendant Foster urges that the trial court erred in giving an instruction on the emergency doctrine without including the qualification that it cannot be invoked by one whose own negligence brought about, in whole or in part, the emergency with which he is confronted.

We have recently had occasion to discuss at some length the emergency doctrine and the qualification referred to. *Sandberg v. Spoelstra* (1955), 46 Wn. (2d) 776, 285 P. (2d) 564. There can be no question that, in the present case, had the trial court given the usual emergency doctrine instruction (to the effect that, when one is confronted with a sudden peril requiring instinctive action, he is not held to the same degree of care as when he has time for reflection), it would have been prejudicial error not to have added the qualification. However, the instruction in question, although it begins with a reference to sudden emergency, does no more than state the familiar rule:

"The conduct of a party to a collision or accident is not necessarily to be judged by the facts as they now appear before you, but such party is entitled to have his acts and conduct considered in the light of the facts as they appear to him at the time."

*Severns Motor Co. v. Hamilton, supra*; *Peterson v. Betts* (1946), 24 Wn. (2d) 376, 165 P. (2d) 95.

The instruction then states:

"It is not necessarily what was the safest thing to do or what was the wisest thing to do or what could or ought to

have been done, but the question is did the party at the time act as a reasonably cautious, prudent driver under the circumstances would have acted";

and concludes:

"If he did, then he cannot be charged with negligence, even though he did not do what you now believe would have been the safest thing for him to have done."

■ This is not an instruction on the doctrine of sudden emergency, and the addition of the qualification to that doctrine requested by defendant Foster would have been confusing and not helpful to the jury. The trial court did not err in refusing to include it as a part of the instruction in question.

We come now to a consideration of the amount of the judgment, which defendants urge is excessive.

Mrs. Thomas, who was forty-six years of age at the time of the accident, had had an infirmity of her left leg since infancy or early childhood, and had some disability in her right leg. Nevertheless, prior to her injury she did her own housework and participated in such activities as ice skating, bowling, fishing, gardening, and hiking. In this collision, her right hip was broken and her right leg was fractured just below the kneecap. From the date of the injury (June 5, 1953) through August of that year, she was hospitalized. For nearly three months more she was confined to her bed; and it was in the spring of 1954 that she started to use crutches. The bone below the kneecap knitted properly but the knee remains somewhat stiff, there being a thirty-degree limitation of motion which is expected to be permanent. The fractured ends of her hip bone were "tucked in line" by a stainless steel appliance, and there has been a complete and permanent fusion of the hip joint, resulting in rigidity. Her doctor testified that her leg is turned "almost straight sideways, and with the knee being somewhat stiff, and this [the hip] being completely stiff, Mrs. Thomas has great difficulty in walking." At the time of the trial (May, 1955), she was unable to do anything that required bending, such as dressing herself or using her sewing machine. It will be

impossible for her to live a normal life so far as any activity involving the use of her legs is concerned. Obviously, her ice skating, bowling, fishing, gardening, and hiking days are over.

The defendants, in support of their contention that twenty thousand dollars for permanent disability and five thousand dollars for pain and suffering are excessive, cite nine cases, the two most recent of which were decided in 1940 and 1927. Comment on the decreased purchasing power of the dollar in the intervening years is unnecessary. We cannot believe that the defendants are serious in their contention that these amounts are excessive under the circumstances of this case.

One assignment of error is to the failure to strike from the plaintiffs' cost bill an item of sixteen dollars for a witness fee and the mileage of the witness, designated as Mr. Olson, who did not testify. We have no record of what occurred before the trial court at the time of the hearing on the motion to retax costs. The only information we have concerning the matter is a purported affidavit, which is in reality an unsworn statement by one of defendants' counsel, that "No witness named Mr. Olson testified at the trial of this action; and no male witness whose surname was Olson testified herein."

The fact that a person called as a witness and in attendance does not testify, does not preclude the taxing of costs for a witness fee and mileage. *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.* (1919), 107 Wash. 378, 392, 181 Pac. 898.

In their brief the defendants state that Mr. Olson "did not register as a witness." We presume that they intended to urge that he did not report his attendance to the clerk of the court, as required by the Laws of 1949, chapter 146, § 1, p. 370 (Rem. Supp. 1949, § 482 [*cf.* RCW 4.84.090]). As heretofore indicated, there is nothing in the record to support the statement that the witness did not report his attendance, and there is nothing before us to show that the trial court erred in denying the motion to retax costs.

No error being found in the record, the judgment is affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.

July 3, 1956. Petition for rehearing denied.