# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1833

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

*Plaintiff-Appellant*,

*v.*

WELLS FARGO BANK N.A. and
CHARLES SCHWAB & CO., INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 9716—**Matthew F. Kennelly**, *Judge.*

_____

ARGUED MAY 17, 2004—DECIDED JULY 2, 2004

_____

Before POSNER, EASTERBROOK, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* This diversity suit governed by
Illinois law raises issues of banking and commercial law.
Allianz Life Insurance Company had a checking account at
Wells Fargo bank (actually a predecessor of Wells Fargo, but
we can ignore that detail) for the payment of benefits to
employees covered by Allianz's employee health plan.

Charles Schwab, a securities brokerage firm that offers checking services to its customers, received a check for $287,651.23 made out to it and drawn on Allianz's account at Wells Fargo. The check was presented to Schwab for deposit by a man who called himself James M. Carden and said he wanted to open a brokerage account in his name. Schwab opened an account in Carden's name, credited the account with the face amount of the check, and deposited the check in a bank in which Schwab has an account. Two weeks later Carden faxed Schwab directions to wire various amounts of money in his Schwab account, adding up to almost all the money in it, to accounts (none in Carden's name) in other financial institutions. Schwab made the transfers as instructed, though only after checking with Wells Fargo to make sure that Allianz's check to Schwab had cleared so that the money that Carden wanted to withdraw would not come out of Schwab's pocket. The check had cleared.

Within a few days, however, Allianz discovered that Carden had never been employed by it. It believes that Carden, whom investigators have been unable to track down ("Carden" may not be the depositor's real name), had forged the $287,651.23 check. Allianz asked Wells Fargo to make good the loss. Wells Fargo refused. Travelers had insured Allianz against such losses, so it paid off Allianz and then brought this suit, as Allianz's subrogee, against both Wells Fargo and Schwab. Although the Uniform Commercial Code, in force in Illinois as in all states, contains elaborate provisions regulating commercial paper, including checks, Travelers invoked a common law duty of banks—a duty the UCC has not superseded—not to honor checks in the circumstances of this case. After a bench trial, the district judge ruled in favor of the defendants, and Travelers appeals.

Wells Fargo could not be held liable for honoring a forged or otherwise unauthorized check if, in fact, the check was not forged or unauthorized; and in ruling for Wells Fargo the judge ruled that Travelers had failed to prove that the check made out to Schwab and deposited by Carden had not been authorized by Allianz. Travelers had intended to present testimony by the only two employees of Allianz who were authorized to sign checks drawn on the account on which the $287,651.23 check was drawn that they had not authorized the check. But at trial, instead of putting these employees on the witness stand or, if they were unavailable, submitting their depositions, Travelers presented affidavits containing their testimony. The judge correctly ruled the affidavits inadmissible as hearsay. The affiants were not available for cross-examination, as they would have been had they testified live or given depositions earlier at which the defendants could have cross-examined them.

It might seem to follow directly from this ruling that the case was properly dismissed. Yet the district judge, while convinced that without the affidavits Travelers could not prove that the check was unauthorized, dismissed only the claim against Wells Fargo on that ground. He distinguished the claim against Schwab on the ground that Schwab might have had a duty to Allianz to inquire whether the check was authorized. But even so, and even if Travelers proved that Schwab had violated its duty to Allianz, in order to obtain relief Travelers would have to show that Schwab, had it fulfilled its duty, would have discovered that Allianz had not authorized the check to Schwab, and having discovered this would not have let Carden transfer the money out of his Schwab account. The judge may have missed this elementary point about causation because, despite ruling in favor of Wells Fargo, he may have believed that the check *was* unauthorized. For in a part of his oral opinion (and beware oral opinions in complex cases) in which he held that

Travelers was in any event barred from relief by contributory negligence on the part of Allianz, the judge said that the $287,651.23 check "had a similar appearance to the earlier check"—a check that the judge thought Allianz had been negligent in failing to investigate—"which essentially means that, on its face, it didn't appear phony or altered in any way, but it is a reasonable inference that it was prepared by the same person, and it would have been a reasonable inference that it was prepared by the same person *who prepared the earlier unauthorized check*" (emphasis added).

There had been two earlier suspicious checks drawn on Allianz's account at Wells Fargo. The first, for $26,500, was payable to a Michelle R. Bryon. The second, for $46,651.23, was payable to an Allan M. Ferrao. Since the check to Carden was for $287,*651.23*, it is almost certain that whoever forged the check to Ferrao also forged the check to Schwab that Carden presented; at all events the inference seems inescapable that the $287,651.23 check was also unauthorized. There was evidence of this apart from the affidavits (which were not good evidence, as we have said)—not only the identity of the last five digits in the second and third checks, but also that efforts to locate Carden failed, an experienced investigator for Allianz concluded that the check Carden had deposited had been forged or altered, and Schwab itself unguardedly argued that Travelers' claim was barred by section 4-406(d)(2) of the Uniform Commercial Code.

To explain the last point, section 4-406(d)(2) provides that the drawer of a check (Allianz, and thus Travelers as its subrogee) can't complain about the check's alteration "by the same wrongdoer" who had previously altered a check of the drawer, if the drawer would have discovered the alteration simply by comparing the bank's statement (as-

suming as in this case that the bank rendered a statement of account to its customer) with its own records. UCC § 4-406, comment 2; *Marx v. Whitney National Bank*, 713 So. 2d 1142, 1146-48 (La. 1998); *Mercantile Bank of Arkansas v. Vowell*, 117 S.W.3d 603, 612-13 (Ark. App. 2003); *Espresso Roma Corp. v. Bank of America, N.A.*, 124 Cal. Rptr. 2d 549, 551-52 (App. 2002). The implication is that Carden had altered at least one previous check *and* the check at issue in this case as well.

The reason we term Schwab's arguing section 4-406(d)(2) "unguarded" is that the section cannot provide a defense for Schwab, because Allianz was not a customer of Schwab. *Mac v. Bank of America*, 90 Cal. Rptr. 2d 476, 479-481 (App. 1999); *UnBank Co. v. Whittaker-Gomez*, 438 N.W.2d 382, 384 (Minn. App. 1989); 6C Lary Lawrence, *Anderson on the Uniform Commercial Code* § 4-406:10 (3d rev. ed. 2003). It may provide a defense to Wells Fargo, but the district judge, having decided that Wells Fargo had no prima facie liability to Allianz, didn't consider any of the defenses that a bank might be able to interpose against a suit by a customer who had been negligent. See UCC §§ 3-406(a), 4-406(c), (d); *Gulf States Section, PGA, Inc. v. Whitney National Bank*, 689 So. 2d 638, 641-42 (La. App. 1997); 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 19-3 (4th ed. 1995).

Maybe all the judge meant in the passage we quoted earlier was that since as he said the $287,651.23 check "didn't appear phony or altered in any way," it wouldn't have put Wells Fargo on notice that something was fishy; and then Wells Fargo might be off the hook even if the check was unauthorized. For while ordinarily a bank is strictly liable for charging a customer's account with an amount that the customer had not authorized the bank to pay (and Allianz was Wells Fargo's customer), UCC § 4-401(a), a bank and its customer can contract out of that strict

liability, §§ 4-401(a), 4-103(a), and Wells Fargo argues that it did so in its contract with Allianz. This was another of Wells Fargo's defenses that the judge didn't reach.

We really don't know what the judge was thinking. His findings on the question whether the check was authorized are in irreconcilable conflict. But probably the best interpretation is that he thought it didn't matter. He clearly thought Schwab was off the hook even if the check was unauthorized, and let us consider whether he was correct about that at least. The common law of Illinois as of other states requires a bank, if someone tries to deposit a check made out to it in his own account, to exercise due care to make sure that the drawer (the third party) intended the depositor to receive the drawer's money. *Mutual Service Casualty Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 613-14 (7th Cir. 2001) (Illinois law); *Douglass v. Wones*, 458 N.E.2d 514, 522 (Ill. App. 1983); *Federal Ins. Co. v. NCNB National Bank of North Carolina*, 958 F.2d 1544, 1549-50 (11th Cir. 1992); *Master Chemical Corp. v. Inkrott*, 563 N.E.2d 26, 28-29 (Ohio 1990); *Allis Chalmers Leasing Services Corp. v. Byron Center State Bank*, 341 N.W.2d 837, 839 (Mich. App. 1983) (per curiam); cf. *Murray v. Bank of America, N.A.*, 580 S.E.2d 194, 198 (S.C. App. 2003); see also Boyd J. Peterson, Annotation, "Liability of Bank for Diversion to Benefit of Presenter or Third Party of Proceeds of Check Drawn to Bank's Order by Drawer Not Indebted to Bank," 69 A.L.R.4th 778 (1989) (collecting cases). The danger is great in such a case that the depositor merely found, stole, or forged the check. The risk of his getting away with such fraud is reduced if the bank has a duty to check with the drawer or take other steps to make reasonably sure that the deposit is authorized. The duty is imposed, it should be noted, as a matter of tort law rather than contract law or UCC law (which is mainly contract law); there was no contractual relation between Schwab and Allianz.

As our reference in the preceding paragraph to finding or stealing a check implied, the duty is not limited to cases in which a check is unauthorized (which will usually mean forged). Suppose Allianz wrote a check payable to Schwab in order to transfer funds to Allianz's own investment account with Schwab, and someone stole the check and presented it to Schwab, which credited the thief's account, and the thief later drained the account. Schwab would have committed a tort by not checking with Allianz to learn the drawer's instructions. However, there is no suggestion in this case that Allianz may have authorized the check to Schwab but that Carden then stole it and presented it to Schwab.

The initial question concerning Schwab's performance of its tort duty to Allianz is whether, not being a bank, it *had* such a duty. We cannot find any cases on whether the duty extends to any other commercial enterprises, though we point out for what it is worth that the term "bank" in the Uniform Commercial Code (e.g., UCC § 4-105(1)) has been interpreted to cover other financial institutions that perform bank-type services—including brokerage firms, as in *Lichtenstein v. Kidder, Peabody & Co.*, 727 F. Supp. 975, 978-79 (1989), vacated on other grounds, 777 F. Supp. 423 (W.D. Pa. 1991); *Edward D. Jones & Co. v. Mishler*, 983 P.2d 1086, 1093-97 (Ore. App. 1999); *Pinasco v. Ara*, 631 N.Y.S.2d 346, 348 (App. Div. 1995); *Asian Int'l, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 435 So. 2d 1058, 1062 (La. App. 1983); see also *Woods v. MONY Legacy Life Ins. Co.*, 641 N.E.2d 1070, 1072 (N.Y. 1994) (life insurer that administered money market account). But certainly the common law duty should extend to enterprises such as Schwab that offer a checking service in competition with banks. To lift the duty of inquiry from Schwab's shoulders would be to give it an arbitrary cost advantage in competing with banks for capital. Banks make their money by lending, and they obtain much of that

money by offering checking services to people looking for a place to park their money. Schwab wants to obtain capital from the same source—people who can be induced to deposit their money with a financial institution in exchange for the convenience of being able to deposit and withdraw the money by check. Had Schwab no duty of inquiry, this would reduce its costs of liability insurance and of scrutinizing checks submitted to it for payment and it could use its resulting cost advantage to lure customers from banks that, though they may be no less efficient than Schwab, cannot avoid those costs. There is no reason to confer such a windfall competitive advantage on the brokerage industry. The common law is flexible enough to permit the modification of one of its doctrines when necessary to avoid producing an anomalous result because of a change in commercial practice.

It is true but irrelevant that the common law's imposition of a duty of care on a bank which receives a check made out to it by a drawer who owes the bank no money is unusual because it creates a form of "good Samaritan" liability, which the common law normally refuses to impose. See, e.g., *Cuyler v. United States*, 362 F.3d 949, 953 (7th Cir. 2004); *Stockberger v. United States*, 332 F.3d 479 (7th Cir. 2003); *Restatement (Second) of Torts* § 314 (1965); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, pp. 375-76 (5th ed. 1984). The drawer in a case such as this, to repeat, is not a customer of the payee institution (Allianz drew the check on Wells Fargo, not on Schwab), or anyone else to whom the payee would owe a duty of care under normal tort principles. Rather it's a third party whom the payee is asked to "rescue" from a possible fraud. But unusual as the rule may be in our common law system, it is firmly established (as are many other exceptions to "no 'good Samaritan' liability" reviewed in the *Stockberger* opinion) and there is no justification for confining it to *banks* that offer checking services.

The next question is whether Schwab fulfilled its tort duty of care to Allianz. The district judge thought it had by verifying with Wells Fargo that Allianz had enough money in its account to cover the check. But in doing this Schwab was protecting itself, not the drawer, Allianz. It should have tried to find out from Allianz whether the check had been authorized. Although Allianz's check listed no address or phone number, only a P.O. box number in Milwaukee, it would have taken no more than a minute to look up Allianz's phone number and place a call. If having done so Schwab had found itself entangled in an endless automated phone menu or otherwise unable to get through to a responsible employee of the company in a reasonable amount of time and get a prompt answer to its query, its duty of care might have been satisfied. Alternatively, it could have warned Wells Fargo of the unusual deposit; the warning doubtless would have impelled Wells Fargo to check the matter with its customer, in order to avoid liability. Schwab did nothing and there is no evidence that, had it made a reasonable effort to protect the drawer, even a minimum effort, the effort would have been fruitless. Schwab violated its duty of care to Allianz.

The judge committed two further errors with regard to the claim against Schwab. The first was to rule that Schwab was a holder in due course of the $287,653.21 check and therefore took free from all defenses that the drawer might have against other recipients. A payee can, it is true, be a holder in due course. UCC § 3-302(a)(2), comment 4. And while, like other holders in due course, it must take in good faith, it is reasonably clear that "good faith," as the term connotes, does not include due care, UCC § 3-103, comment 4; 6B *Anderson on the Uniform Commercial Code, supra*, § 3-302:16R, though some cases say it does. *First Federal Savings & Loan Ass'n of South Carolina v. Chrysler Credit Corp.*, 981 F.2d 127, 132-33 (4th Cir. 1992); *Maine Family Federal Credit Union v.*

*Sun Life Assurance Co.*, 727 A.2d 335, 342-44 (Me. 1999); *First City Federal Savings Bank v. Bhogaonker*, 715 F. Supp. 1216, 1220 (S.D.N.Y. 1989). Yet implicit in the common law rule governing banks' liability to drawers is the proposition that a bank presented with a check made out to it by someone who owes it no money, for deposit in the presenter's account, does not take the check in due course. *Mutual Service Casualty Ins. Co. v. Elizabeth State Bank, supra*, 265 F.3d at 621-22; *Douglass v. Wones, supra*, 458 N.E.2d at 522-23; *Dalton & Marberry, P.C. v. NationsBank, N.A.*, 982 S.W.2d 231, 235 (Mo. 1998). Otherwise section 3-302(a)(2) would dissolve the common law rule, which no one contends it does.

Second, the judge held that by failing to discover that two previous checks drawn in its name had been unauthorized, Allianz was guilty of contributory negligence in also failing to discover, before Schwab permitted Carden to withdraw the proceeds of the check, that the third check, the one at issue in this case, was unauthorized. It is good practice for a bank to close an account (of course with notice to the customer, see J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks: The Law of Bank Checks* ¶ 22.08 (2004)) as soon as it discovers that an unauthorized check has been written on the account. The bank may indeed be required to do so in the exercise of its duty of ordinary care to the customer. UCC § 3-103(9). But the customer has a correlative duty, as we know, under section § 4-406(d) to notify the bank that unauthorized checks are being written on its account, if such notification is feasible because the bank has given the customer a statement of his account that the customer can compare with his own records and by doing so readily discover the fraud. The violation of this duty gives the customer's bank a defense; does it also give a defense to a bank, in this case Schwab, that is not the customer's bank but instead a bank to which another unauthorized check drawn on the customer's bank is presented? It could not be

a defense under section 4-406(d), but would have to be a common law defense created by analogy to the defense created by that section.

There is some support in case law for such a defense. *Federal Ins. Co. v. Groveland State Bank*, 333 N.E.2d 334, 336-37 and n. 2 (N.Y. 1975); *Robbins v. Passaic National Bank & Trust Co.*, 160 A. 418, 420 (N.J. 1932); cf. *Sun 'n Sand, Inc. v. United California Bank*, 582 P.2d 920, 940-41 (Cal. 1978). We do not know whether Illinois courts would recognize the defense but we do know that if they did it would not be a *complete* defense because Illinois like most states has replaced contributory with comparative negligence. *Alvis v. Ribar*, 421 N.E.2d 886 (Ill. 1981); *Williams Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 573 (7th Cir. 2004); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 847 (7th Cir. 1999). Neither contributory nor comparative negligence is any defense to an intentional tort, e.g., *Williams Electronics Games, Inc. v. Garrity*, *supra*, 366 F.3d at 573 (Illinois law), but here it would be asserted against Schwab's unintentional tort of negligence.

Since the case must be remanded, however, we need not decide whether Schwab has preserved a defense of comparative negligence and if so whether such a defense may, under Illinois law, be asserted in a case such as this.

The judgment in favor of the defendants must be reversed. All that is certain at this stage is that Schwab violated its tort duty of care to Allianz and hence to Travelers. The case must be remanded for a new trial at which the main issues will be whether the check was authorized and if not whether Wells Fargo is liable to Travelers for paying the check and whether Schwab has any (partial) defenses to its prima facie liability to Travelers. If the trial determines that the check *was* authorized, neither defendant is liable to Travelers, for remember that Travelers does not contend

that the check might have been authorized but stolen or otherwise misdirected. Whether Travelers should be given another chance to present admissible evidence that the check was (as it strongly appears to be) unauthorized is another issue for resolution by the district judge in the first instance.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*